83 C.C.P.A.(Patents)

## Application of EHRGOTT.

### Patent Appeal No. 5109.

Court of Customs and Patent Appeals.

March 6, 1946.

J. W. Greenbowe, of Bloomfield, N. J. (Towson Price, of Bloomfield, N. J., of counsel), for appellant.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting claims 1, 2, 4, 6, 7, 8, and 10, relating to a gas purifying and sterilizing device, and claim 11, relating to a method of conditioning gas, in appellant's application for a patent. Claims 3, 5, and 9 were allowed by the examiner.

The sole reference is—

Anderson, 2,218,190, October 15, 1940

In the accomplishment of the desired result appellant, among other things, utilizes and generally follows the practice, so acknowledged in its specification, not only of the patent to Penney, No. 2,129,783 of September 13, 1938, relating to a precipitator, but also the patent to James, No. 2,258,765 of October 14, 1941, relating to a generator, "or corresponds with the ultraviolet discharge lamps or generators sold under the trade-mark 'Sterilamp' by the Westinghouse Electric & Manufacturing Co."

Claims 1, 4, and 11 are considered illustrative—

"1. A gas purifying and sterilizing device comprising an ionizing chamber, a precipitating chamber, and means disposed in said precipitating chamber for generating ultra-violet radiations of a bactericidal character in order to sterilize gas passing therethrough, said means being so positioned that radiations therefrom are directed to impinge on the surface of the precipitating means to maintain the same in sterile condition."

"4. A gas purifying and sterilizing device comprising an ionizing chamber, a precipitating chamber, means for causing gas to flow successively through first said ionizing chamber and then said precipitating chamber, said precipitating chamber comprising spaced oppositely-charged, flat electrodes lying substantially parallel to the direction of the gas flow, and ultraviolet generators having elongated ultraviolet transmitting envelopes, the axes of which extend transverse to the line of flow of the gas and which lie adjacent to, without intersecting, and substantially perpendicular to the planes of said flat electrodes, so as to direct radiations onto the surfaces thereof and maintain the same in sterile condition."

"11. The method of conditioning gas comprising ionizing the solid particles therein, flowing said gas over surfaces charged to a potential so that said ionized particles are attracted thereto and the gas freed therefrom, and simultaneously treating said flowing gas and said surfaces with bactericidal ultraviolet radiations."

The two embodiments of the alleged invention set forth in appellant's application, other than for method, are correctly described in the brief of the Solicitor for the Patent Office. Omitting references to pages and to numerals unnecessary here, the Solicitor states:

"The application as its title indicates is for an apparatus for purifying and sterilizing a gas. In particular the apparatus is for removing dust particles from air and killing bacteria in the air. The apparatus, as shown in Figs. 1 and 2 of the application, comprises a plurality of wires and cooperating electrodes located at the top of the apparatus where the air enters, for ionizing the entering air. The ionized air passes down between parallel charged plates and the dust particles in the air are deposited on these plates. Up to this point the apparatus is substantially the same as that shown in the patent to Gaylord W. Penney, No. 2,129,783, of September 13, 1938 and appellant states in his application that the present invention is an improvement over that described in the Penney patent. The alleged improvement is in the provision of means for sterilizing the air. In the species shown in Figs. 1 and 2 the sterilizing means is a U-shaped tube which is in effect a neon tube which gives off ultra-violet light of a wave length that will kill bacteria. Appellant states that the tube is constructed and operates generally as described in the patent to James, No. 2,258,765, of October 14, 1941. As shown in Figs. 1 and 2, the branches of the tube pass through a series of openings in the plates. By this arrangement the light from the tube not only reaches the air passing between the plates but also impinges on the sides of the plates and sterilizes the dust particles deposited thereon. Claims 3, 5, and 9, which are specific to this combination, have been allowed.

"In the modification shown in Figs. 3 and 4 there are several neon tubes some arranged above and others below the series of plates of the separator. These tubes like the tube of the other species are arranged transversely of the planes of the separate plates and transversely of the current of air."

The patent to Anderson relates to methods and apparatus for an air conditioning system and an air purifier by the removal of bacteria and odors from the air to be conditioned, one embodiment of which is designed for use on a railway passenger car.

In describing his device Anderson states that "The purifier 9 may be an electro-static precipitator of the type described beginning on page 159 of the January, 1937, Proceedings of American Institute of Electrical Engineers." That publication is not printed in the record. The statement of the Board of Appeals that the publication described an elementary form of the precipitator disclosed in the patent to Penney, supra, is not challenged, however, by appellant. It is therefore accepted as true. See In re Pirani and Nitschke, 75 F.2d 223, 22 C.C.P.A., Patents, 1002.

Claims 3, 5, and 9, specific to a structure by which the ultra-violet generator passes through apertures in the precipitating plates defined in appellant's application, were allowed. The rejected claims, other than claim 11 for method, relate to a structure whereby the precipitating plates are not actually intersected by the ultra-violet generator, but the axis of each ultra-violet generator extends transverse to the plates.

It is noted that the ultra-violet generating discharge lamps here relied upon by appellant takes the form of a bank of neon tubes so disposed in relation to the precipitator plates that the rays of the generator may sterilize not only the air current as it passes through the plates but also the dust particles which have lodged on the plates. The dust particles which have been collected on the plates, according to appellant, are sterilized by reason of the fact that the ultra-violet rays impinge on the surface of the plates.

The generators described by appellant have straight elongated envelopes and extend perpendicularly to the planes of the plates. Appellant argues that the means for generating the ultra-violet rays of Anderson is not so disposed that radiations therefrom impinge on the surface of the plates; in other words, that the generator of Anderson is positioned parallel to the plates, instead of perpendicularly, like appellant's, and therefore the ultra-violet rays of Anderson do not impinge upon the plates and sterilize the dust particles which have collected thereon.

It is noted, however, that in the specification of Anderson—

"The ultra-violet sterilizer 12 shown mounted on the output side of the precipitator 9 may also be used for purifying

168

the recirculated air drawn in by the fan 10. This lamp 12 may be used alone for sterilizing the air or may be used with or alternately with the precipitator as desired by manipulation of the switches 13 and 14 which act to connect the precipitator 9 and lamp 12 to the rotary converter 15 or other suitable source of electric energy. The lamp 12 may be of the type which generates very strong ultra-violet light through the ionization of a gas such as mercury vapor."

Appellant contends here as he did before the tribunals of the Patent Office that the lamp of Anderson according to the disclosure hereinbefore noted is definitely not in the precipitator, but rather outside of it; and, "assuming the best possible construction of Anderson," appellant states in his brief—

" * * * By reason of this arrangement, as well as because of the *failure* of Anderson to *place* his sterilizing lamp *inside* of the precipitating chamber, but rather *apparently* in a portion of the duct *offset* from the precipitating chamber, *no effective* sterilization of the active surfaces of more than a small portion of the plates, if any, is possible by reason of the shading of the remaining plates by what might *accidently* be irradiated. * * *" (Emphasis quoted)

It is not contended that Anderson specifically states that the generator is positioned parallel to the plates or that it is located either within or without the chamber of the precipitator, and from the drawings it is impossible to conclude whether the generator is or is not within the chamber. In any event, according to Anderson's disclosure, the generator is adjacent to the precipitator and since there is no obstruction disclosed between the generator and the precipitator, the rays from the generator penetrate into the space between the plates of the precipitator.

It is, true, as pointed out in the statement of the Primary Examiner, that "So long as light strikes the plate surfaces, there will be a sterilization of such surface to a degree." The arrangement of the generator disclosed by appellant may be more effective than the arrangement of the generator of Anderson in transmitting the ultra-violet rays to the surfaces of the plates. This fact of itself, however, does not constitute patentable invention. In re Goessling, 108 F.2d 266, 27 C.C.P.A., Patents, 819; In re Stover, 146 F.2d 299, 32 C.C.P.A., Patents, 823.

We have carefully examined each of the rejected claims and the respective arguments of appellant in support thereof but find it unnecessary to discuss them further here for the reason that the record discloses they were properly discussed and decided by the tribunals of the Patent Office.

The decision of the Board of Appeals is accordingly affirmed.

Affirmed.